1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

JS-6
CC: BK Court

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| In re:<br><br>KSL MEDIA, INC., T.V. 10's, LLC and FULCRUM 5, INC.,<br><br>               Debtors. | Case No. CV 15-08748-AB<br><br>[Chapter 7 Case No. BK 13-15929-MB, Jointly Administered with Case Nos. BK 13-15930-MB and BK 13-15931-MB]<br><br>[Adv. No. AP 15-01212-GM] |
| Affects KSL Media, Inc.<br><br>Affects T.V. 10's, LLC<br><br>Affects Fulcrum 5, Inc.<br><br>X Affects all Debtors | **ORDER DENYING DEFENDANTS' MOTION TO WITHDRAW REFERENCE TO BANKRUPTCY COURT (DKT. NO. 1)** |
| DAVID K. GOTTLIEB, as Chapter 7 Trustee for KSL Media, Inc.; DAVID K. GOTTLIEB, as Chapter 7 Trustee for T.V. 10's, LLC; and DAVID K. GOTTLIEB, as Chapter 7 Trustee for Fulcrum 5, Inc.<br><br>               Plaintiffs,<br><br>v.<br><br>RODGER M. LANDAU and LANDAU GOTTFRIED & BERGER LLP,<br><br>               Defendants. | |

1       Before the Court is Defendants Rodger M. Landau and Landau Gottfried &

2  Berger LLP's ("Defendants") Motion to withdraw the reference of the instant

3  adversary proceeding, Adv. No. 1:15-ap-01212-GM, to the United States

4  Bankruptcy Court for the Central District of California ("Motion").  Dkt. No. 1.

5  Plaintiff David Gottlieb, as Chapter 7 trustee of debtors KSL Media, Inc.; T.V. 10's

6  LLC; and Fulcrum 5, Inc. (collectively "Debtors"), timely filed his Opposition on

7  December 14, 2015.  Dkt. Nos. 13-16.  Defendants timely filed their Reply on

8  December 21, 2015.  Dkt. Nos. 17-19.

9       The Court heard oral argument on January 4, 2016 and took the matter under

10  submission.  ECF No. 20.  Having considered the materials and arguments submitted

11  by the parties, and for the reasons indicated below, the Court **DENIES** Defendants'

12  Motion without prejudice to renewal at the time of trial.

13  **I.     BACKGROUND**

14       The Debtors filed for Chapter 11 bankruptcy in the United States Bankruptcy

15  Court for the Central District of California in September 2013.  Dkt. No. 1 at 3; *see*

16  *also* Dkt. No. 1-4.  Their cases were consolidated in October 2013 and converted to

17  Chapter 7 in December 2013.  Dkt. Nos. 1-4, 1-5; *see also* Compl. at ¶ 12, Dkt. No.

18  1-1.  On September 9, 2015, Plaintiff filed Adversary Action No. 1:15-ap-01212-

19  GM against Defendants in the United States Bankruptcy Court for the Central

20  District of California, alleging claims for professional negligence, breach of

21  fiduciary duty, and breach of contract in connection with Defendants' representation

22  of the Debtors before and after the Debtors' bankruptcy petition (the "Adversary

23  Proceeding").  Dkt. No. 1-1.

24       As alleged in Plaintiff's Complaint in the Adversary Proceeding, the Debtors

25  retained Defendants to provide insolvency, bankruptcy, and work-out advice in May

26  2013 after Debtor KSL Media, Inc. ("KSL") lost its largest client and was unable to

27  continue its operations.  Compl. ¶¶ 18-30.  Defendants represented the Debtors when

28

ORDER DENYING DEFENDANTS' MOTION TO WITHDRAW REFERENCE TO
BANKRUPTCY COURT (DKT. NO. 1)

1    they filed their bankruptcy petitions in September 2013 and continued to represent
2    them during the bankruptcy proceedings.  *Id.* at ¶¶ 32-36.  Plaintiff alleges that, to
3    prolong the proceedings and thus increase their fees, Defendants turned what should
4    have been a "straightforward liquidation case" into a "quagmire."  *Id.* at ¶¶ 37-45.
5    Defendants failed to file a proposed disclosure statement with the Debtors' proposed
6    Chapter 11 liquidation plan, and in an effort to increase fees, assumed unsupported,
7    intransigent positions against the committee of unsecured creditors (the
8    "Committee").  *Id.*  These developments led the U.S. Trustee to file a motion to
9    appoint a Chapter 11 trustee, noting that the Debtors had failed to supply sufficient
10   or accurate information to the Committee and that the parties' intractable positions
11   were causing significant delays.  *Id.*
12        Before the bankruptcy court could hear the U.S. Trustee's motion, the Debtors
13   (still represented by Defendants) filed a motion to convert the proceedings to
14   Chapter 7.  *Id.* at ¶¶ 46-47.  The court subsequently granted the motion and
15   appointed Plaintiff as the Chapter 7 trustee.  *Id.*  Plaintiff alleges, however, that
16   Defendants attempted to "burn down the house on their way out the door" by
17   advising the Debtors' employees to resign immediately after the court granted the
18   motion to convert, significantly disrupting the conversion from Chapter 11 to
19   Chapter 7 and prejudicing both Plaintiff and the Committee.  *Id.* at ¶ 48.
20        Upon observing Defendants' actions and reviewing the U.S. Trustee's
21   comments on the proceedings, Plaintiff sought and was granted permission to initiate
22   a special investigation into the pre-petition and post-petition activities of the
23   Debtors' and the Committee's advisors, including Defendants.  *Id.* at ¶¶ 49-51.
24   Plaintiff's Special Counsel conducted an in-depth investigation, including extensive
25   document review and interviews, and ultimately resolved Plaintiff's concerns
26   regarding each of the advisors, except for Defendants, who refused to participate in
27
28

1   the investigation except by court order and denied all improprieties when finally

2   forced to participate.  *Id.* at ¶¶ 52-59.

3        Plaintiff alleges that both before and after the filing of the bankruptcy

4   petitions, Defendants engaged in a host of wasteful and self-serving tactics to rack

5   up fees and protect their role in representing the Debtors in the bankruptcy

6   proceedings.  *Id.* at ¶¶ 60-102.  Defendants incurred over $500,000 in fees just

7   between May and September 2013 pre-petition and another $600,000 in fees post-

8   petition.  *Id.*  Despite these high fees, Plaintiff alleges Defendants failed to initiate a

9   number of critical pre-petition activities while pursuing fruitless strategies designed

10  to either serve their own interests or shield KSL executives from personal liability

11  during the bankruptcy.  *Id.*  Post-petition, Defendants continued to rack up fees by

12  disrupting the proceedings and pursuing still more fruitless strategies while also

13  minimizing creditor recovery.  *Id.* at ¶¶ 86-102.  Based on this conduct, Plaintiff

14  alleges state law claims for (1) Professional Negligence, (2) Breach of Fiduciary

15  Duty, and (3) Breach of Contract as well as claims for (4) Constructively Fraudulent

16  Transfer of the Pre-Petition Fees under 11 U.S.C § 548, (5) Disgorgement of Pre-

17  Petition Fees under 11 U.S.C. § 329, (6) Disallowance of Post-Petition Fees under

18  11 U.S.C. § 329, and (7) Equitable Subordination under 11 U.S.C. § 510.  By

19  stipulation of the parties, Plaintiff alleges all seven of his claims against Landau

20  Gottfried & Berger LLP and alleges only his first, second, and fourth claims against

21  Rodger Landau the individual.  Dkt. No. 1-3.

22       In October 2015, the bankruptcy judge presiding over the bankruptcy

23  proceedings, Judge Martin Barash, recused himself from the Adversary Proceeding.

24  Declaration of Peter Isola in support of Motion ("Isola Decl.").  Ex. 7.  The

25  proceeding was then reassigned to Judge Geraldine Mund, who had no prior

26  experience with the Debtors' cases.  *Id.*; Mot. at 2-3; *see also* Declaration of William

27  Gyves in support of Opp. ("Gyves Decl."), Ex. C at 12:6-7.  At the time Defendants

28

ORDER DENYING DEFENDANTS' MOTION TO WITHDRAW REFERENCE TO
BANKRUPTCY COURT (DKT. NO. 1)

filed their Motion, Defendants had not yet responded to Plaintiff's Complaint in the Adversary Proceeding, and the initial status conference was set for December 8, 2015 in bankruptcy court. Mot. at 1, 4, Dkt. No. 1. As set forth in their Motion, however, Defendants "vigorously dispute" the Complaint's allegations, demand trial by jury, and do not consent to a jury trial in the bankruptcy court. *Id.*

## II.  LEGAL STANDARD

Under 28 U.S.C. § 157(d), a district court "may withdraw, in whole or in part, any case or proceeding referred under this section, on its own motion or on timely motion of any party, for cause shown."[1] Withdrawal under this provision is discretionary, and "[t]he standard for permissive withdrawal is high and must be satisfied by the party seeking withdrawal." *Rock Ridge Properties, Inc. v. Greenback Mortgage Fund*, LLC, No. CIV. S-11-2547, 2012 WL 346465, at *2 (E.D. Cal. Jan. 31, 2012) (citing *Hawaiian Airlines, Inc. v. Mesa Air Group, Inc.*, 355 B.R. 214, 223 (D. Haw. 2006)). In deciding whether to exercise its discretion to grant withdrawal, a district court should consider factors such as (1) "the efficient use of judicial resources"; (2) "delay and costs to parties"; (3) "uniformity of bankruptcy administration"; and (4) "prevention of forum shopping" as well as whether the issues are "core" or "non-core" within the meaning of § 157(b)(2), and whether any party has a right to a jury trial. *In re Daewoo Motor Am., Inc.*, 302 B.R. 308, 310 (C.D. Cal. 2003) (citing *Sec. Farms v. Int'l Bhd. of Teamsters, Chauffers, Warehousemen & Helpers*, 124 F.3d 999, 1008 (9th Cir. 1997)).

Additionally, under the 1994 amendments to Section 28 U.S.C. § 157, "[i]f the right to a jury trial applies in a proceeding that may be heard under this section by a bankruptcy judge, the bankruptcy judge may conduct the jury trial if specially

---

[1] Section 157(d) also provides that, if the court determines "that resolution of the proceeding requires consideration of both title 11 and other laws of the United States regulating organizations or activities affecting interstate commerce," the district court must withdraw the proceeding. Defendants do not seek to withdraw the Adversary Proceeding under this provision, however.

4

designated to exercise such jurisdiction by the district court and with the express

consent of all the parties."  28 U.S.C. § 157(e).  Thus, if a party does not consent to

jury trial in the bankruptcy court, as in the present case, the district court must

ultimately withdraw the reference if it reaches the jury trial stage.  *See id.*; *see also*

*McCord v. Papantoniou*, 316 B.R. 113, 125 (E.D.N.Y. 2004) (distinguishing *In re*

*Cinematronics, Inc.*, 916 F.2d 1444, 1451 (9th Cir. 1990), and *In re Ben Cooper*,

896 F.2d 1394, 1403 (2d Cir. 1990), as predating the 1994 Amendment to Section

157(e)).

As Plaintiff correctly notes, however, a party's right to a jury trial does not

require immediate withdrawal.  *See* Opp. at 18-21.   Rather, even where a party

demands a jury trial in district court, "the bankruptcy court may retain jurisdiction

over the action for pre-trial matters."  *Sigma Micro Corp. v. Heathcentral.com (In re*

*Healthcentral.com)*, 504 F.3d 775, 788 (9th Cir. 2007).  Indeed, many courts prefer

to delay withdrawal until the case is ready for trial to preserve judicial economy and

efficiency.  *See, e.g. In re GTS 900 F, LLC*, CV 10-06693, 2010 WL 4878839, at *4

(C.D. Cal. Nov. 23, 2010); *see also McCord*, 316 B.R. at 126 ("While defendant's

refusal to consent means that the district court will conduct any eventual jury trial in

this adversary proceeding, judicial economy favors keeping this proceeding

involving core and 'related' claims in the bankruptcy court for pretrial purposes.").

## III.   DISCUSSION

Defendants seek withdrawal of the Adversary Proceeding's referral to

bankruptcy court on two main grounds.  Invoking mandatory withdrawal under *In re*

*Cinematronics* (and by extension, Section 157(e)), Defendants argue that the Court

must withdraw the reference because Defendants have a right to a jury trial on

Plaintiff's claims for professional negligence, breach of fiduciary duty, and breach of

contract (the "Malpractice Claims") and Plaintiff's claim for Constructively

Fraudulent Transfer of the Pre-Petition Fees under 11 U.S.C § 548 (the "Fraudulent

1   Transfer Claim") and Defendants do not consent to a jury trial in bankruptcy court.

2   Mot. at 10-12; Reply at 13-14.  Defendants concede that the Court need not

3   withdraw the reference immediately under this standard, but nonetheless contend

4   that early withdrawal is appropriate because the bankruptcy court is not familiar with

5   Plaintiff's claims and withdrawing the claims now will enable the Court to

6   familiarize itself with the claims before presiding over the jury trial.  Reply at 13-15.

7         Invoking discretionary withdrawal, Defendants argue that the Court should

8   withdraw the reference to preserve judicial economy and maintain that withdrawal

9   will neither threaten the uniformity of bankruptcy administration nor encourage

10  forum shopping.  Mot. at 9, 12-13, 15; Reply at 4-13, 17-24.  Defendants reason that,

11  because Plaintiff's Malpractice and Fraudulent Transfer Claims dominate the

12  Adversary Proceeding and are either non-core claims or "*Stern* claims," they require

13  the district court's *de novo* review and the district court should therefore withdraw

14  the reference and adjudicate the claims at the outset.  *Id.*  Defendants also argue that

15  the Court's initial review will be more efficient because the Adversary Proceeding is

16  closely related to the already-withdrawn *In Re KSL Media, Inc., David K. Gottleib,*

17  *as Chapter 7 Trustee for KSL Media, Inc. v. Kalman Liebowitz et al.*, Central

18  District Case No. CV 15-02143-AB, currently pending before this Court (the

19  "*Liebowitz* case").  Mot. at 12-13, 15; Reply at 18-19.  Defendants finally contend

20  that withdrawal will not promote forum shopping because the bankruptcy court has

21  not issued any substantive rulings yet and will not interfere with the administration

22  of bankruptcy proceedings because Plaintiff's claims do not implicate those issues.

23  Mot. at 13-15; Reply at 21-24.

24        Plaintiff does not dispute, and thus appears to concede, that Defendants have a

25  right to a jury trial on Plaintiff's Malpractice and Fraudulent Transfer Claims.  *See*

26  Opp. at 18-21.  As a result, if this case proceeds to trial, the Court ultimately will

27  need to withdraw the reference to conduct the jury trial at least on Plaintiff's first

28

6

1    four causes of action.  To determine whether withdrawal is appropriate in the pretrial

2    stage, however, the Court must consider whether withdrawal will preserve judicial

3    economy.  *See Heathcentral.com*, 504 F.3d at 787-88.  Thus, in this case, the Court's

4    threshold inquiry under either the mandatory or discretionary framework is the same

5    – namely, whether withdrawal at this stage in the litigation will promote judicial

6    economy.  The question of judicial economy turns on whether the dominate claims

7    are core or non-core, however.  As the Second Circuit has explained:

> A district court considering whether to withdraw the reference should
> first evaluate whether the claim is core or non-core, since it is upon this
> issue that questions of efficiency and uniformity will turn. For example,
> the fact that a bankruptcy court's determination on non-core matters is
> subject to de novo review by the district court could lead the latter to
> conclude that in a given case unnecessary costs could be avoided by a
> single proceeding in the district court. Conversely, hearing core matters
> in a district court could be an inefficient allocation of judicial resources
> given that the bankruptcy court generally will be more familiar with the
> facts and issues.

15    *In re Orion Pictures Corp.*, 4 F.3d 1095, 1101 (2d Cir. 1993) *cited with approval in*

16    *In re Temecula Valley Bancorp, Inc.*, 523 B.R. 210, 214-15 (C.D. Cal. 2014).

17    Accordingly, the Court will first consider whether Plaintiff's Malpractice and

18    Fraudulent Transfer Claims are non-core or *Stern* claims, then consider whether the

19    other factors of efficiency and prevention of forum shopping weigh in favor of

20    withdrawal at this time.[2]

21    **A.    Domination of Core Claims**

22       Under 28 U.S.C. § 157(b)(1), once a proceeding is referred by the district

23    court under Section 157(a), bankruptcy judges "may hear and determine all cases

24    under title 11 and all core proceedings arising under title 11, or arising in a case

25    under title 11, referred under subsection (a) of this section, and may enter

---

[2] Plaintiff did not address in his Opposition whether withdrawal will disrupt the uniformity of bankruptcy administration, and Defendants maintain that no such disruption would occur.  The Court therefore finds this factor is neutral and needs no further analysis.

ORDER DENYING DEFENDANTS' MOTION TO WITHDRAW REFERENCE TO
BANKRUPTCY COURT (DKT. NO. 1)

1 | appropriate orders and judgments, subject to review under section 158 of this title."
2 | In contrast, bankruptcy judges may hear non-core proceedings otherwise related to a
3 | case under Title 11, but they are required to submit proposed findings of fact and
4 | conclusions of law to the district court for *de novo* review on timely objection.  28
5 | U.S.C. § 157(c)(1).

6 | As a threshold matter, Defendants argue for the first time in their Reply that a
7 | distinction between core and non-core claims is obsolete in light of the holding in
8 | *Stern v. Marshall*, 131 S. Ct. 2594, 108 L. Ed. 2d 475 (2011).  Reply at 1-2.  But this
9 | is inaccurate, and it ignores subsequent Supreme Court precedent.  In *Stern*, the
10 | Court considered whether a bankruptcy court could enter final judgment on a
11 | debtor's common law tortious interference counterclaim against a defamation suit
12 | brought against the debtor.  *See* 131 S. Ct at 2602, 2617.  Section 157(b)(2)(C)
13 | defined the counterclaim as a core claim, but the counterclaim was only tangentially
14 | related to the defamation suit and did not concern the bankruptcy proceeding in any
15 | other way.  *Id.*  As a result, the Court held that that the counterclaim qualified as a
16 | core claim under Section 157(b) but held that, under Article III, the bankruptcy
17 | judge did not have the authority to render final judgment on the counterclaim.  *Id.* at
18 | 2604-18.

19 | Three years later, in *Executive Benefits Ins. Agency v. Arkison*, 134 S. Ct.
20 | 2165, 189 L.Ed.2d 83 (2014), the Court clarified the *Stern* framework.  The Court
21 | first affirmed the distinction between core and non-core claims, recognizing:

> If a matter is core, the statute empowers the bankruptcy judge to enter
> final judgment on the claim, subject to appellate review by the district
> court. If a matter is non-core, and the parties have not consented to final
> adjudication by the bankruptcy court, the bankruptcy judge must
> propose findings of fact and conclusions of law. Then, the district court
> must review the proceeding *de novo* and enter final judgment.

*Arkison*, 134 S. Ct. at 2172.  The Court then explained that "*Stern* made clear that
some claims labeled by Congress as 'core' may not be adjudicated by a bankruptcy

8

1  court in the manner designated by § 157(b)" thus creating "*Stern* claims" – *i.e.*
2  "proceedings that are defined as 'core' under § 157(b) but may not, as a
3  constitutional matter, be adjudicated as such (at least in the absence of consent)." *Id.*
4  (citations omitted).  The Court in *Arkison* thus confirmed that the distinction
5  between core and non-core claims is still viable and that *Stern* simply provided a
6  thin overlay to the analysis.

7       In their Motion papers, Defendants argue that Plaintiff's three state law claims
8  are non-core claims and his fourth claim for fraudulent transfer is a *Stern* claim
9  under *Mastro v. Rigby*, 764 F.3d 1090, 1093-94 (9th Cir. 2014).  Mot. at 7-8.  In
10  their Reply papers, however, Defendants argue that, like the fraudulent transfer
11  claim, Plaintiff's three state law claims should be treated as *Stern* claims.  Reply at
12  6-7.  None of Defendants' arguments are persuasive.  Instead, the Court finds that
13  Plaintiff's Malpractice and Fraudulent Transfer Claims are all core claims that may
14  be finally adjudicated by the bankruptcy court.

15       Generally, a "core proceeding is one that invokes a substantive right provided
16  by title 11 or a proceeding that, by its nature, could arise only in the context of a
17  bankruptcy case." *Battle Ground Plaza, LLC v. Ray (In re Ray)*, 624 F.3d 1124,
18  1131 (9th Cir. 2010) (quotations and citation omitted).  28 U.S.C. § 157(b)(2)
19  provides several examples of core proceedings, including "matters concerning the
20  administration of the estate" and "other proceedings affecting the liquidation of the
21  assets of the estate or the adjustment of the debtor-creditor or the equity security
22  holder relationship, except personal injury tort or wrongful death claims."  28 U.S.C.
23  § 157(b)(2)(A), (O).

24       Defendants initially argue there can be "no doubt" that Plaintiff's three state
25  law causes of action are non-core proceedings because they "arise solely under
26  California law and could have been brought in state court."  Mot. at 7.  Defendants
27  further argue that Plaintiff's fourth cause of action for fraudulent conveyance is also

28

9

1   a non-core claim despite arising from a federal statute because, as held in

2   *Granfinanciera, S.A. v. Nordberg*, 492 U.S. 33, 54-56 (1989), claims for fraudulent

3   conveyance are "quintessentially suits at common law that more nearly resemble

4   state law contract claims brought by a bankrupt corporation to augment the

5   bankruptcy estate than they do creditors' hierarchically ordered claims to a pro rata

6   share of the bankruptcy res." *Granfinanciera,* 492 U.S. at 56 *as quoted in Stern*, 131

7   S. Ct. at 2614 (other internal quotations omitted).

8        Defendants overlook, however, that "[a] determination that a proceeding is not

9   a core proceeding shall not be made solely on the basis that its resolution may be

10   affected by State law." 28 U.S.C. § 157(b)(3) *as cited in Schultze v. Chandler*, 765

11   F.3d 945, 949 (9th Cir. 2014), *as amended* (Aug. 1, 2014).  Rather, the proper

12   inquiry is whether the claims would have any "existence outside of the bankruptcy."

13   *Schultze*, 765 F.3d at 948 (citing *In re Harris Pine Mills,* 44 F.3d 1431, 1435 (9th

14   Cir. 1995)).  And the Ninth Circuit has already recognized that post-petition claims

15   against court-appointed bankruptcy professionals are core claims seeking to protect

16   rights that arise from the bankruptcy itself.  *Schultze*, 765 F.3d at 948.

17        In *Schultze*, members of an unsecured creditors' committee sued their court-

18   appointed attorney for committing legal malpractice while representing them in a

19   debtor business's bankruptcy proceeding.  *Id.* at 947.  The Ninth Circuit recognized

20   that "[w]here a post-petition claim was brought against a court-appointed

21   professional, we have held the suit to be a core proceeding," because "'[a] *sine qua*

22   *non* in restructuring the debtor-creditor relationship is the court's ability to police the

23   fiduciaries, whether trustees or debtors-in-possession and other court-appointed

24   professionals, who are responsible for managing the debtor's estate in the best

25   interest of creditors.'"  *Id.* at 949 (quoting *Southmark Corp. v. Coopers & Lybrand*

26   *(In re Southmark Corp.)*, 163 F.3d 925, 931-32 (5th Cir. 1999)).  The court then held

27   that, based on this reasoning and because the defendant attorney's "duties pertained

28

ORDER DENYING DEFENDANTS' MOTION TO WITHDRAW REFERENCE TO
BANKRUPTCY COURT (DKT. NO. 1)

1   solely to the administration of the bankruptcy estate," the committee member's

2   lawsuit "was based solely on acts that occurred in the administration of the estate"

3   and thus "falls easily within the definition of a core proceeding." *Id.*[3]

4         The same reasoning appears to apply here.  Plaintiff has sued Defendants for

5   breach of their duties in administering the bankruptcy estate immediately before and

6   after the bankruptcy petition.  And while one court has observed that "[a]ctions

7   based upon postpetition conduct connected with a bankruptcy proceeding are more

8   likely to be found core than prepetition actions," (*In re Com 21*, No. C-04-03396,

9   2005 WL 1606357, at *5 (N.D. Cal. July 6, 2005)), Plaintiff's claims are restricted

10  in time to only a few months prior to the filing of the petition and focus on

11  Defendants' advice provided in preparation for bankruptcy.  *See, e.g., Simmons v.*

12  *Johnson, Curney & Fields, P.C. (In re Simmons),* 205 B.R. 834, 841, 845 (Bankr.

13  W.D. Tex. 1997) (holding bankruptcy court had jurisdiction over pre-petition and

14  post-petition claims because they involved "preparation for bankruptcy and the

15  bankruptcy itself")*; c.f. In re ACI-HDT Supply Co.,* 205 B.R. 231, 237 (B.A.P. 9th

16  Cir. 1997) (finding claims for professional negligence and malpractice focused on

17  advice pre-petition unrelated to the bankruptcy proceeding and thus were not core

18  claims).

19        The Court thus concludes that Plaintiff's claims are based solely on acts

20  committed by bankruptcy fiduciaries that occurred either in the administration of the

21  estate or in preparation for that administration.  *See Schultze*, 765 F.3d at 948-49; *see*

22  *also, e.g., In re Com 21*, C-04-03396, 2005 WL 1606357, at *6 ("The choice of

23  bankruptcy counsel is approved by the court; attorney's fees paid to counsel are

24

25        [3] At the motion hearing, counsel for Defendants attempted to distinguish *Schultze* based on
26  its procedural posture, which focused on whether the bankruptcy court had jurisdiction over certain
    malpractice claims rather than considering whether a reference to the bankruptcy court on such
27  claims should be withdrawn.  *See* 765 F.3d at 948-50.  This distinction is irrelevant, however.  The
    Court's analysis in *Schultze* turned on whether the malpractice claims were core or non-core,
28  which is the same issue presented here.

ORDER DENYING DEFENDANTS' MOTION TO WITHDRAW REFERENCE TO
BANKRUPTCY COURT (DKT. NO. 1)

1   likewise approved by the court.  Bankruptcy counsel is more than a disinterested

2   third party unwillingly brought into Bankruptcy Court.  Its presence there is of its

3   choosing and its purpose there is to advise its client with regard to administering the

4   estate.").  And by extension, the Court concludes that Plaintiff's first four claims are

5   core claims under Section 157 and may be finally adjudicated by the bankruptcy

6   court.  *See, e.g., Schultze*, 765 F.3d at 948-49; *In re Harris Pine Mills,* 44 F.3d at

7   1438 (holding state law claims against bankruptcy trustee and agents were core

8   claims because they focused on conduct "inextricably intertwined" with a sale of

9   property belonging to the bankruptcy estate); *Meyer v. Young Conaway Stargatt &*

10  *Taylor LLP*, CV 10-540, 2011 WL 1317282, at *2 (D. Id. March 31, 2011) (holding

11  claims against debtors' counsel were core because "[t]he fidelity of these

12  professional is critical to the administration of the bankruptcy, and hence this

13  malpractice action 'arises in' bankruptcy and is a core proceeding"); *In re Com 21,*

14  2005 WL 1606357, at *7 (holding malpractice claim against counsel for debtor-in-

15  possession concerning misconduct in bankruptcy proceeding was a core claim); *see*

16  *also Baker v. Simpson,* 613 F.3d 346, 350 (2d Cir. 2010) (holding malpractice claim

17  "was an essential part of administering the estate and therefore implicated the

18  bankruptcy court's core jurisdiction"); *Grausz v. Englander*, 321 F.3d 467, 471-72

19  (4th Cir. 2003) (holding malpractice claim against attorneys for debtor "would have

20  no practical existence but for the bankruptcy case").[4]

21

22      [4] Contrary to Defendants' arguments, the case of *Ross v. Yaspan*, CV 12-07048, 2013 WL
       3448725 (C.D. Cal. July 9, 2013) is inapposite.  In that case, the Chapter 11 Trustee abandoned the
23     debtor's claims of malpractice against his attorneys, instead allowing the debtor to pursue the
       claims in his individual capacity outside the jurisdiction of the bankruptcy court.  2013 WL
24     3448725 at *1.  The debtor pursued his claims in California superior court, and the bankruptcy
       case was closed.  *Id.*  The defendants then filed a notice of removal to federal court, and plaintiff
25     filed a motion to remand.  *Id.*  The court held that the debtor's claims against his attorneys did not
       "arise under" federal bankruptcy law because "resolution of the legal malpractice issue will not
26     change the outcome of the bankruptcy case, particularly since the trustee abandoned the claim and
       the case is closed." *Id.* at *2.  The court also held that that the claims did not "arise in" a Title 11
27     case because, while courts in the Ninth Circuit had held that normally malpractice suits against
       bankruptcy attorneys do arise in Title 11, the court could not find the same connection between the
28     bankruptcy estate and the debtor's claims "particularly when the malpractice claim was previously

1    The Supreme Court's ruling in *Stern* does not change this analysis.  Indeed,
2  contrary to Defendants' sweeping interpretation of *Stern*, the Ninth Circuit has
3  recognized that "the Stern decision addressed the constitutionality of a particular
4  subsection of 28 U.S.C. § 157(b)(2) (i.e., 'counterclaims by the estate against
5  persons filing claims against the estate'), and only then, under the particular facts of
6  that case." *In re Deitz*, 760 F.3d 1038, 1044 (9th Cir. 2014).  The court observed
7  that, in *Stern*, "Chief Justice Roberts made it clear that any constitutional bar to the
8  exercise of judicial power by a bankruptcy court erected by that decision was a very
9  limited one" indicating only that the bankruptcy court "'lacked the constitutional
10  authority to enter a final judgment on a state law counterclaim that is not resolved in
11  the process of ruling on a creditor's proof of claim.'" *Id.* (quoting *Stern*, 131 S.Ct. at
12  2620).  Because of this, "a significant majority of decisions rendered since *Stern*
13  follow Chief Justice Roberts' admonition that the decision be applied narrowly." *Id*.
14  at 1045 (collecting cases); *see also Stern*, 131 S.Ct. at 2620 ("We do not think the
15  removal of counterclaims such as Vickie's from core bankruptcy jurisdiction
16  meaningfully changes the division of labor in the current statute; we agree with the
17  United States that the question presented here is a 'narrow' one.").

18    Here, Plaintiff's claims are not counterclaims and thus, on their face, they are
19  not subject to the holding in *Stern* as narrowed in *Deitz*.  Defendants cite *Mastro v.
20  Rigby*, 764 F.3d 1090, 1093 (9th Cir. 2014) to suggest that the Ninth Circuit has
21  expanded the reach of *Stern* to include at least fraudulent transfer claims.  But here

22

23  abandoned by the Trustee in a now closed bankruptcy case." *Id.* at 3.  The court added, almost in
    dicta fashion, that it was "skeptical" whether the debtor's malpractice claim "arises in" Title 11 in
24  the same way that such a claim would arise in Title 11 when brought against a court-appointed
    trustee.  *Ross* is factually distinguishable because the court based its decision in large part on the
25  fact that the trustee had abandoned the malpractice claims and the bankruptcy case was closed,
    neither of which is true here.  Additionally, the final piece of the court's analysis appears to be at
26  odds with the reasoning expressed in *Schultze* that a "sine qua non" of the bankruptcy process is
    "the court's ability to police the fiduciaries, . . . who are responsible for managing the debtor's
27  estate in the best interest of creditors." *Schultze*, 765 F.3d at 949 (quotations omitted); *see also
    Meyer*, 2011 WL 1317282, at *2.  The Court finds that *Schultze* and *Meyer* are more persuasive on
28  this point.

ORDER DENYING DEFENDANTS' MOTION TO WITHDRAW REFERENCE TO
BANKRUPTCY COURT (DKT. NO. 1)

again, Defendants misconstrue the case law.  In *Mastro*, the court simply reiterated the holding in *Exec. Benefits Ins. Agency v. Arkison (In re Bellingham Ins. Agency, Inc.) ("In re Bellingham")*, 702 F.3d 553 (9th Cir. 2012), *aff'd sub nom. Executive Benefits Ins. Agency v. Arkison*, 134 S. Ct. 2165, 189 L. Ed. 2d 83 (2014), where the court held that, under *Stern* and *Granfinanciera*, bankruptcy courts do not have the authority to "enter a final judgment in a fraudulent conveyance action against a **nonclaimant** to the bankruptcy estate[.]"  *In re Bellingham*, 702 F.3d at 556, 565 (emphasis added); *see Mastro*, 764 F.3d at 1093-94; *but see also Arkison*, 134 S. Ct. at 217 (assuming without deciding that the fraudulent conveyance claims in *In re Bellingham* were *Stern* claims).

Unlike the noncreditors in *Mastro* and *In re Bellingham*, Defendants are the debtors' counsel and may be entitled to priority fee payments, making them more like claimants than nonclaimants in the bankruptcy proceedings.  *See generally In re Hers Cosmetics Corp.*, 114 B.R. 240, 244 (Bankr. C.D. Cal. 1990) ("Congress made the decision under § 330 and § 503(b)(4) [of the Bankruptcy Code] to reimburse attorneys fees from the estate.  In the case of § 330, Congress obviously felt that it was important to pay attorneys from the estate on a priority basis to provide an incentive for attorneys to represent debtors.").  As a result, the holdings in *Mastro* and *In re Bellingham* do not appear to apply, and the Court concludes that none of Plaintiff's claims qualify as *Stern* claims.  Plaintiff's Malpractice and Fraudulent Transfer Claims are core proceedings that the bankruptcy court may finally adjudicate, and this factor accordingly weighs in favor of denying withdrawal at this time.

## B.    Judicial Economy and Efficient Use of Resources

Devoting most of their arguments to the question of whether Plaintiff's claims are non-core claims or *Stern* claims, Defendants' sole judicial economy argument is that immediate withdrawal will eliminate the need for dual preparation or

1   proceedings.  Defendants argue that because the Court will ultimately preside over
2   the jury trial and because the Court will need to review the bankruptcy court's
3   adjudication of Plaintiff's Malpractice and Fraudulent Transfer Claims *de novo*, the
4   Court should withdraw the claims now and adjudicate them from the outset,
5   particularly because the bankruptcy judge now assigned to the case is not familiar
6   with the facts of the underlying bankruptcy proceedings and has not issued any
7   substantive rulings in the Adversary Proceeding.
8       The Court has determined that it will not need to review Plaintiff's
9   Malpractice and Fraudulent Transfer Claims *de novo* automatically because the
10  claims are core claims and not *Stern* claims.  Thus, there is little risk of duplicated
11  proceedings, unfair delay, or extra cost to the parties.  And though the Court will
12  ultimately need to preside over any jury trial of these claims, this fact alone does not
13  weigh in favor of immediate withdrawal.  As the Ninth Circuit recently explained:

> Under our current system Congress has empowered the bankruptcy
> courts to "hear" Title 11 actions, and in most cases enter relevant
> "orders." As has been explained before, this system promotes judicial
> economy and efficiency by making use of the bankruptcy court's
> unique knowledge of Title 11 and familiarity with the actions before
> them.  Accordingly, if we were to require an action's immediate
> transfer to district court simply because there is a jury trial right we
> would effectively subvert this system.  Only by allowing the bankruptcy
> court to retain jurisdiction over the action until trial is actually ready do
> we ensure that our bankruptcy system is carried out.

21  *Healthcentral.com*, 504 F.3d at 787-88 (citations omitted).  The *Healthcentral.com*
22  decision thus makes clear that bankruptcy courts are especially equipped to initially
23  evaluate actions arising in Title 11 cases and their review of such actions is not
24  superfluous simply because a district court may later participate.  Indeed, as the
25  Ninth Circuit observed, the goals of the bankruptcy court system may be best served
26  "by allowing the bankruptcy court to retain jurisdiction over the action until trial is
27  actually ready."  *Healthcentral.com*, 504 F.3d at 788.
28

ORDER DENYING DEFENDANTS' MOTION TO WITHDRAW REFERENCE TO
BANKRUPTCY COURT (DKT. NO. 1)

Plaintiff argues that because the bankruptcy court is so equipped, and because the Adversary Proceeding specifically focuses on the standards of conduct pre- and post-petition, postponing withdrawal until trial will actually preserve judicial economy.  Opp. at 23-25.  The Court agrees.  Unlike the previously withdrawn *Liebowitz* Action, which concerns state law claims alleging corporate officer misconduct, the present Adversary Proceeding concerns state law claims that allege misconduct in the preparation for and litigation of the bankruptcy proceedings themselves.  *C.f. supra* Section I; *In Re KSL Media, Inc.*, CV 15-021453-AB (GJSx), Dkt. No. 13 (April 15, 2015).  Indeed, Plaintiff painstakingly details how his claims in the Adversary Proceeding raise a myriad of bankruptcy-specific issues, including the propriety of counsel's pre-bankruptcy planning and advice, Chapter 11 plan formation, asset transfers immediately preceding bankruptcy, bankruptcy case administration, and fees incurred for pre-petition and post-petition representation. Opp. at 23-24.  In the face of such issues, the bankruptcy court is best prepared to preside over the case until trial even if the bankruptcy court has not yet engaged with the facts or issued any substantive rulings.  *See, e.g., Franchise Mgmt. Servs., Inc. v. Righetti Law Firm, P.C.*, No. 09CV1578, 2009 WL 3254442, at *3 (S.D. Cal. Sept. 30, 2009) ("The Court finds it appropriate to postpone withdrawing the reference until it becomes clear that this case will proceed to trial.  This matter remains in its early stages, and it is possible that dispositive motions may resolve the case short of trial.  Moreover, the bankruptcy court is uniquely qualified to conduct discovery and pre-trial proceedings in this case since core proceedings are at issue.").  Accordingly, the Court concludes that the judicial efficiency factor weighs against withdrawal at this time.

## C.    Forum Shopping

Finally, the Court determines that the factor of forum shopping is neutral or weighs slightly against withdrawal at this time.  "'Forum shopping' occurs when a

1   party attempts to manipulate an action to have it heard before a forum it deems more

2   favorable, charitable, or sympathetic toward its point of view." *Calvert v. Berg*, No.

3   C13-1019, 2013 WL 3407790, at *5 (W.D. Wash. July 8, 2013). It is likely present

4   when a party, "perceiving that it may find itself forced into a disadvantageous

5   forum, seeks to manipulate procedural devices to secure an advantage which, were

6   those devices not available, it could not employ to defeat its opponent's choice of

7   forum." *Id.* (quotations omitted).

8       Here, Defendants are the subject of sanctions orders from two different

9   bankruptcy judges, but both were entered after Defendants filed their Motion. When

10  Defendants filed their Motion, they faced a motion for sanctions before Judge Alan

11  Ahart concerning their alleged bad faith opposition to a fee petition in the underlying

12  bankruptcy proceedings. Declaration of Eric Madden in support of Opp. ("Madden

13  Decl."), Ex. B. But Judge Ahart did not grant the motion for sanctions until weeks

14  after Defendants filed their Motion. *Id.*, Ex. C. at 55:4-8. Likewise, Judge Mund

15  expressed her disapproval of Defendants' litigation tactics in the Adversary

16  Proceeding and issued an Order to Show Cause as to why she should not sanction

17  Defendants for that conduct, but Defendants were not on notice of her disapproval or

18  the Order to Show Cause until a few weeks after their Motion was filed. *See* Gyves

19  Decl., Exs. B-D.

20      Accordingly, there is insufficient evidence in the record to prove Defendants

21  filed their Motion to avoid the sanctions awarded by Judge Ahart and threatened by

22  Judge Mund. Even so, it seems possible that, when Defendants filed their Motion,

23  they knew their reputation in these bankruptcy courts was on thin ice and that

24  Defendants might benefit from withdrawing the Adversary Proceeding to a different

25  forum. The Court thus concludes that the factor of forum shopping is neutral or

26  weighs slightly against withdrawal at this time. *See, e.g., Calvert*, 2013 WL

27

28

ORDER DENYING DEFENDANTS' MOTION TO WITHDRAW REFERENCE TO
BANKRUPTCY COURT (DKT. NO. 1)

1   3407790, at *5 (finding evidence of forum shopping where bankruptcy judge had
2   previously sanctioned the party moving for withdrawal).

3   **IV.    CONCLUSION**

4          For the foregoing reasons, the Court **DENIES** Defendants' Motion to
5   Withdraw Reference to Bankruptcy Court (Dkt. No. 1) without prejudice to renewal
6   if and when the case is ready for trial.  This case is hereby remanded to the
7   bankruptcy court.

9          **IT IS SO ORDERED.**

11  DATED: January 6, 2016

    _____
    HONORABLE ANDRÉ BIROTTE JR.
    UNITED STATES DISTRICT JUDGE

ORDER DENYING DEFENDANTS' MOTION TO WITHDRAW REFERENCE TO
BANKRUPTCY COURT (DKT. NO. 1)